Good morning and may it please the court. I'm Peter Henderson. I'm here today on behalf of Joseph Canfield. There was a plain error in this case about the minimum term of supervised release, and I think there are two issues in controversy. One is waiver, whether this claim was waived, and second, whether the error was in fact plain. Let me start with waiver. As we all know, waiver is the intentional relinquishment of a known right, and I think the transcript points pretty clearly to the fact that the trial counsel was unaware that the statute provided for anything other than a five-year term of supervised release. And so our typical conception of waiver is knowingly waiving something isn't present here. More importantly, the government advances a strategic rationale for why counsel might have done this. But part of the strategy would have to involve a lawyer knowingly misleading and lying to a court about what the law was. In other words, if we are to imagine this was strategic, we have to conclude the trial counsel knew that the law didn't require five years, but repeatedly told the judge that anyway. Actually, no. Mr. Henderson, as I'm sure you're aware, we have a lot of recent cases on the difference between forfeiture and waiver, clarifying the difference between a negligent affirmation and a negligent omission here. And a negligent affirmation, which is what happened here. True, the defense counsel didn't know she was making an error in repeatedly telling the district judge that there was a five-year mandatory minimum on the supervised release term here. But we've held in recent cases that that's distinct from a negligent omission, that if counsel overlooks negligently an argument, then we'll call that a forfeiture and review for plain error. But when there's an affirmative adoption of a position and advancing a position that's based on a mistake, that that counts as a waiver. Well, I think there's been some tension in the case law. Yeah, we've been trying to fix that. I, sir, I appreciate that. I think that the, you know, when you look back at cases, for example, like Jaime's Jaime's, when we have something that happens in the district court where neither the judge, the probation office, the prosecutor, nor defense counsel understands that there is that there is an error here. It's hard to say that that is the intentional relinquishment of a known right when the right was unknown to anybody in the courtroom. Counsel, why, why doesn't one understand the known right? That's the right to argue for a lower sentence. There's always a right to argue for something. If you decide I'm going to give up on this, you have intentionally surrendered the right to argue for something. What bugs me about your position is that on your position, there is no such thing as waiver. Waiver matters only when there would otherwise be a reversible error. And your contention is whenever there is a reversible error, there can't have been a waiver. And therefore, the whole doctrine of waiver evaporates. And that seems pretty extreme. Yeah, I don't think that's my position. My position is that when, when, in your view, would there be a legal error, otherwise reversible and a waiver? If, if, for example, the defendant or the judge had the discretion to impose any, any term of supervised release and legal error. Well, well, that's exactly right. I'm asking you to give me a case when, in your view, there would be a plain legal error and a waiver. Well, take, for example, jury instruction cases, right? The defense proffers a jury instruction that is just wrong. It's a, it's a misstatement of the law. The counsel thinks it's a correct statement of the law, but it's not. That, that's your quintessential waiver. Why? Your, your argument is that people can't waive something if they are mistaken about it. And the defense lawyer in that case would say, well, you know, I'm just a bad lawyer. I thought that was the law when I proposed it, but it wasn't. So there's no waiver. Well, here, here's my distinction, because defense counsel cannot make frivolous arguments. We can make arguments that are actually against the law. And when we believe that a statute makes it impossible for a judge to do what we want the judge to do, it would be unethical for us to say, judge, ignore the statute. You know, the, for example, you take your typical drug case. No, you could, the defense lawyer in this case could easily stand up and say, you know, I, I really wish that you imposed a sentence less than five years of supervised release. I am going to make the best argument I can that the law allows you to do that. And the defense lawyer can do that. In fact, the defense lawyer should do that. There's nothing unethical about that, especially in a case like this where the argument would have been correct. So you can't say that there's some ethical constraint that bars the defense lawyer from making legally correct arguments. This lawyer could have argued for a lower sentence. Well, you're right about that. And I suppose one of the practical consequences of that is if we enforce that type of waiver provision, we kick the can down the road to a 2255 proceeding. And that may be the way to do things. I think that plain error review allows us to shortcut that step in cases where it's plain that everybody made a mistake. I think the reason people are asking about waiver is that the Supreme Court held in Olano that if there's a waiver, there is no error by definition. We can't engage in, we can't find a waiver and engage in plain error review without contradicting the Supreme Court. And we are, well, let's just say we don't do that. Well, I certainly understand that. And again, I would just admit that when we are talking about the intentional relinquishment of a known right, we are not describing the situations here where the probation officer proposes the wrong standard and nobody notices the error and everybody then acts on the error without realizing it. I think there is a difference between doing something without knowing that you're committing an error and knowing that there are alternative courses and choosing not to take one. I think that's still an essential difference. But certainly everybody missed this and defense counsel did the best that she could under her misapprehension, which is you make the most of the facts that you can't change. So that the record is what it is. I certainly don't don't dispute any of that. And I will save the remaining time I have for rebuttal. That's fine. Thank you. Mr. Kinstra. Am I pronouncing that correctly? Kinstra, Your Honor. Yes. May it please the Court. Good morning, Your Honors. My name is Jeff Kinstra and I represent the United States. First, Canfield, and most importantly, Canfield waived the only argument that he raises on appeal. This Court has held that affirmative approval results in waiver and it really is that simple here. Flores called that the most obvious example of waiver when the defendant expressly tells the court that he has no objection. Or when there's an objective manifestation of the district court that the defendant approves of the particular issue at hand. That's exactly what happened here. Defense counsel told the district court that there is a minimum term of five years of supervised release and in fact that there's nothing the court can do about it. There's nothing vague or ambiguous about that statement. Counsel clearly knew that in making that statement, the court would, in fact, impose a five-year term of supervised release, which is what the court did. Now the defendant realized... Mr. Kinstra, if I could ask a sort of theoretical question here about our doctrine in this area about waiver and forfeiture. Is the problem really in the initial importation of the definition of waiver from the constitutional context? Such as waiving your right to a lawyer, waiving your right to testify, etc. This whole idea that a waiver is an intentional relinquishment of a known right. That's a definition that's imported from the context of constitutional rights of which one has an entitlement to a warning and of which the court or the relevant government actor has to take a knowing waiver. But to use that definition for ordinary courtroom errors strikes me as a mistake. A mistake, a misfire in our doctrine that perhaps is worthy of re-examining. I know I'm just... This is a left-field question. I'll ask Mr. Henderson to address this left-field question as well. But as we're sorting through the tension in the case law, and I think it is fair to say there's tension in our case law, I think it's wise to go back to first principles. So I think that's a fair observation. In Flores, the court discussed that what's required for waiver will depend on the context. So I think the example they gave in Flores was when you have a Rule 11 colloquy, obviously the rights, you know, you have your constitutional rights, and so it's a pretty high standard for waiver. The court has to go through a whole colloquy and make sure you understand your rights, what you're giving up, what the consequences are. And that's because there's a rule that requires that. Right. And so with issues like sentencing issues and jury instructions, Flores also discussed, the standard just isn't quite so high. I think Judge Easterbrook's point was correct. If you know that you have the opportunity to object, you know that by what you're saying is going to cause the district court to take a particular action. When you tell the district court that there is a five-year minimum term, I think that's an intentional statement. There's no allegation that it was just a slip of the tongue here. And because that was intentional, I think that that is an objective manifestation of waiver. It's almost an invited error telling a district court to take this action and then objecting on appeal that the district court did so. Now, along the same lines, the defendant had advance notice of this term. That gave the defendant an opportunity to think through and consider what to focus on at the hearing, what was important enough, what the defendant wanted to object to, and conversely, what was not worth focusing on. And the district court gave the defendant an opportunity to object. He did so as to a condition of supervised release, but not to the length. And this court has held in really indistinguishable circumstances in Rangel and Gomila, both of which involved the length of supervised release, that that sequence reflects an intentional choice to focus on some things as opposed to others. And so again, that's an intentional choice that results in waiver. Last is to the strategy, I would just note, I disagree with Mr. Henderson, and it requires a conclusion that the defense counsel lied. I think at the very least, this is an unsettled issue because there's no appellate precedent that really squarely addresses this and resolves it in the defendant's favor. So I think the fact that this is unsettled, and as well as the fact that defense counsel could have easily believed that there wasn't a whole lot, that the defendant wasn't giving up a lot by not picking a fight over the minimum term of supervised release. But given the nature of his conducts, both his offense conduct and conduct on supervision, the court was likely to impose a significant term of supervision regardless. And given those factors, it was more reasonable or certainly a reasonable choice to instead pivot and focus on the term of imprisonment and to try to leverage the supervision into a shorter term of imprisonment, which is often the most, you know, a defendant's foremost concern at the hearing is what term of imprisonment they're going to get. And the defense counsel used the term of supervision to that purpose. So I think there is a strategic reason here, and it's a reasonable one. And for all those reasons, I think there was a waiver. Unless this court has any questions on the plain error argument, we'd stand on our briefs on that and request the court to affirm. You argued to the plain error point, if we get there, this is not a waiver, that 3582E2 permits modification of supervised release. I think that's a one-way ratchet. I don't think it permits reduction of the term of supervised release that was imposed at sentencing, or does it? It does. Any time after one year, the court can terminate the term of supervised release. So it can reduce. So it can reduce or terminate the term, not just change the conditions. That's my understanding, yes, Your Honor. Okay. Thanks. Mr. Henderson. Thank you. Yeah, to get to your question, Chief Judge Sykes, you know, the basic thing, and this is what the court emphasized in Flores, was that criminal defendants must make informed and intelligent decisions if we're going to talk about waiver. And I think the record here reflects that nobody was informed about what the actual standard was. Everybody was operating under misapprehension. Now, theoretically, you could say, well, they were informed that it was possible that these statutes might come into play. And so by not challenging it beforehand, you make a decision not to address that. But I think in the circumstances of this case, ultimately, Mr. Canfield is the one who's serving this sentence. And, you know, what I look to in the record that tells me that the government strategy argument isn't quite right is trial counsel was willing to agree to two years in prison and no further supervised release. This wasn't about the prison time. This was about, you know, getting multiple... Getting off paper. He wanted to get off paper. That's the colloquial way to put it. That's right. So, and, you know, that's what happened here. Now, I don't think that's waiver under Hymens-Hymens. But if it is, then the court might want to clarify this, that we need to bring it in a 2255 proceeding. I think the flexibility of plain error review, I think that it's flexible enough to recognize when there are inadvertent mistakes that are made. But in any case, there certainly was a mistake. It's plain under the statutory language. So we'd ask that the court reverse. Thank you. All right. Thanks very much. Our thanks to both counsel. The case is taken under adjournment.